PAGE V. LYON, Trustee, Plaintiff in Error, *vs.* PONY MOORE *et al.* Defendants in Error.

*Opinion filed June 18, 1913.*

1. LEASES—*when sub-lease operates as an assignment.* Where a lessee sub-lets the whole premises for the entire remainder of the term such sub-letting amounts to an assignment of the lease and creates a privity of estate between the original lessor and the sub-lessee, even though the original lessee reserves a contract right to a fixed amount per month in excess of the rental which the original lessor is entitled to demand from the sub-lessee.

2. SAME—*when lessee's surrender of lease will not defeat creditors.* Where a lessee sub-lets the whole premises for the entire remainder of the term and reserves a. monthly rental in excess of that the lessor is entitled to, the fact that such lessee, in pursuance of a scheme to place his extra rent beyond the reach of creditors, surrenders the lease to the lessor and procures a new lease to be given to another person who is co-operating with him, has the effect of releasing the lessee from his contractual obligation to the lessor but will not prevent the lessee's trustee in bankruptcy from reaching the extra rent for the lessee's creditors.

3. LIS PENDENS—*lis pendens begins with service of process or appearance.* Lis pendens begins with service of process, but when a party appears in court in response to a notice served upon him, his appearance waives the service of process and the doctrine of *lis pendens* applies from the time of such appearance.

4. DEBTOR AND CREDITOR—*when a purchaser must prove that he is a bona fide purchaser.* Although a transaction is fraudulent as against creditors, an innocent purchaser for a sufficient consider-

ation, without notice of the fraud, will be protected; but where it is shown that he claims title under a grantee whose title is fraudulent, the burden is upon him to show that he purchased in good faith and without notice of the fraud.

5. Notice—*possession of property is notice of the possessor's rights.* Where a person is in possession of premises under a sub-lease of the whole premises for the entire remainder of the term his possession is notice to third persons of his rights, and nothing that the original lessor can do in the way of executing a new lease can have any effect upon his rights as an assignee, through the sub-lease, of the remainder of the term.

Writ of Error to the Branch "D" Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Ben M. Smith, Judge, presiding.

A. D. Gash, for plaintiff in error.

Silber, Isaacs, Silber & Woley, (Martin J. Isaacs, and James D. Woley, of counsel,) for defendants in error.

Mr. Justice Cartwright delivered the opinion of the court:

Pony Moore was the lessee of the premises numbered 171-175 Twenty-first street, in Chicago, for a term beginning July 15, 1905, and expiring April 30, 1915, under a lease from Eleanora H. Fowler at a rental of $100 per month. On November 1, 1905, he sub-let the premises for the remainder of the term at $150 per month to Joseph Marshall, who afterward assigned the sub-lease to Frank J. Marshall. On May 23, 1907, Pony Moore surrendered the original lease to Mrs. Fowler and she accepted the surrender, there being no consideration on either side except the release of the contract obligations. Mrs. Fowler made a lease the same day to William Blunk at the same rental as the former lease to Pony Moore, from June 1, 1907, to the end of the term, on April 30, 1915, and she received nothing from Blunk for making the lease. Moore

and Blunk went to the office of the real estate agents of Mrs. Fowler, in Chicago, who had charge of the property, and stated that they had been up to Milwaukee to see Mrs. Fowler and had her cancel Pony Moore's lease and sign a new lease to Blunk. After the new lease was made Mrs. Fowler's agents collected the same rental of $100 a month for her, which was paid by Marshall or sometimes by Blunk. Pony Moore was adjudged a bankrupt on August 12, 1907, on his petition, and Page V. Lyon, plaintiff in error, was appointed trustee. Lyon filed his bill on December 7, 1907, in the superior court of Cook county, alleging that a judgment in favor of Julius F. Taylor was recovered against Moore on January 17, 1907; that within four months before Moore filed his petition in bankruptcy he fraudulently surrendered the lease to Mrs. Fowler; that she fraudulently executed a second lease, without consideration, for the remainder of the term, to William Blunk, and that the bankrupt was the owner of a theatre, saloon and pool and billiard tables, which Blunk obtained possession of without any consideration. The defendants in error were made defendants to the bill and Pony Moore was defaulted. Mrs. Fowler answered, admitting making the second lease but denying any fraud on her part, and alleging that she was satisfied to receive $100 per month rental for the premises. William Blunk answered, denying the assignment from Joseph Marshall to Frank Marshall or that the sub-lease was in existence; alleged that he received his lease without fraud, and that on January 8, 1908, he sold his lease to George H. Williams for a valuable consideration, and denied that the bankrupt owned the theatre, saloon, billiard tables and pool tables. Joseph Marshall and Frank Marshall answered, admitting the execution of the lease to Moore, the sub-letting to Joseph Marshall and the assignment of the sub-lease to Frank Marshall, and alleged that the sub-lease was still in existence, and that Moore having surrendered his lease Mrs.

Fowler became the landlord of Marshall, and that Blunk collected the rent under directions from Mrs. Fowler. They denied any fraud on their part. There was a hearing before the chancellor, in which there was evidence concerning the theatre, saloon, billiard tables and pool tables and also proof of the facts alleged in the bill concerning the leases. The averment of Blunk's answer that he assigned his lease to George H. Williams on January 8, 1908, was proved, and also the further fact that Williams afterward assigned his right in the lease to William D. Blackburn. The consideration named in the assignment of Blunk to Williams was $500, but what the actual consideration was was not shown, although there was evidence tending to show that Blunk owed Williams something which was the consideration or part of it. The assignment from Williams to Blackburn recited a consideration of $3800. The chancellor entered a decree finding in favor of plaintiff in error as to the charges that the theatre and saloon and fixtures were fraudulently transferred to Blunk; that the billiard tables and pool tables afterward came back into the possession of the bankrupt and were sold by him for $350. As to the leases, the chancellor found that the surrender from Moore to Mrs. Fowler and the making of the new lease to Blunk was a part of a scheme of Moore and Blunk to defraud the creditor of Moore; that Mrs. Fowler had no knowledge of such fraudulent purpose but acted with good faith and without fraud; that the purchase of the new lease by Williams and the assignment to Blackburn were without knowledge of the fraudulent acts and intent of Moore and Blunk; that Joseph Marshall and Frank Marshall had no knowledge of the fraud of Moore and Blunk, and that Blunk received as rent for the premises, in excess of the rent paid to Mrs. Fowler, for the months from June, 1907, to January, 1908, inclusive, $400 in trust for the bankrupt. The decree set aside the assignments and transfers of the theatre, the saloon and the

furniture and fixtures and ordered the same turned over to the plaintiff in error, and ordered Blunk to pay to the plaintiff in error $900 and Moore to pay $350. The bill was dismissed as to Joseph Marshall and Frank J. Marshall for want of equity. The Appellate Court for the First District affirmed the decree, and the record is here for a review by virtue of a writ of *certiorari* which we granted.

Pony Moore, the bankrupt, was the lessee of the premises from Mrs. Fowler, and he sub-let them for the entire remainder of the term from November 1, 1905, to Joseph Marshall, who afterward assigned the sub-lease to Frank J. Marshall. Moore retained no reversion in himself, but while he was liable to Mrs. Fowler for only $100 a month the rent reserved to him in the sub-lease was $150 a month, so that the lease was worth to him $50 a month for the remainder of the term. After a judgment for $18,000 had been rendered against Moore, he and Blunk devised a fraudulent scheme to defraud the creditor by putting that $50 a month beyond his reach, and to carry the scheme into effect Moore surrendered the original lease. By sub-letting the premises for the whole term the sub-lease operated as an assignment, and privity of estate was created between Mrs. Fowler and Joseph Marshall, so that she became the lessor and he the lessee. (*Sexton* v. *Chicago Storage Co.* 129 Ill. 318.) We so held in a case involving this lease. (*Taylor* v. *Marshall,* 255 Ill. 545.) Marshall, as assignee of Moore's lease, was liable to Mrs. Fowler for $100 a month as rent, and Moore had a contract right to the additional $50 a month rent which Marshall was to pay. The surrender of the lease by Moore released him from his contract obligation to her, and that surrender, together with the new lease to Blunk, was merely a fraudulent attempt to transfer the $50 a month to Blunk, who was conspiring with Moore to defraud his creditor. A court of equity would not permit them by their jugglery of the leases to accomplish that result.

It is contended, however, that Williams was a *bona fide* purchaser for a valuable consideration and without notice and acquired a good title, which he was able to transfer to Blackburn. The bill was filed on December 7, 1907, and on January 7, 1908, in response to a notice which had been served on Blunk, an attorney appeared in court as his solicitor. It does not appear that there was any formal entry of appearance filed, but the attorney stated that he appeared for William Blunk, as his solicitor, and would appear for him without summons being served. Afterward, on January 13, 1908, a stipulation signed by the same solicitor for Blunk was filed in the cause. *Lis pendens* begins with the service of process, (*Hallorn* v. *Trum*, 125 Ill. 247,) but an appearance waives service and brings a party within the jurisdiction of the court equally with service of process. Where a party appears in court in response to a notice served upon him the doctrine · of *lis pendens* applies from the time of such appearance, a voluntary appearance being equivalent to service of process. (25 Cyc. 1463.) Regardless of that question, no evidence was produced showing, or tending to show, that Williams was a *bona fide* purchaser without notice. Although a transaction is fraudulent as against creditors, an innocent purchaser for a sufficient consideration, without notice of the fraud, will be protected; (*Spicer* v. *Robinson*, 73 Ill. 519;) but where it is shown that one claims title under a grantee whose title is fraudulent, the burden is on him to show that he purchased in good faith and without notice of the fraud. (20 Cyc. 763; *Brown* v. *Welch*, 18 Ill. 343; *Roseman* v. *Miller*, 84 id. 297.) It was proved that Blunk was an active participant in the fraud of Moore, and it was incumbent on the defense to prove that Williams had no notice of the fraud. Everything which appeared in the suit tended to prove that he did have notice. He had been advancing money to Blunk, and Blunk could not get any money out of Marshall. Williams would not give Blunk

any more money and said that he would take Blunk's place, and got the lease assigned to him from Blunk, saying he would make it warm for Marshall. Marshall was in possession of the property, and his possession was notice to Williams of his rights, and that he was assignee, through a sub-lease, of the remainder of the term. (*Ronan* v. *Bluhm*, 173 Ill. 277.) Nothing that Mrs. Fowler could do in the way of executing a new lease to Blunk would have any effect upon the rights or the estate of Marshall, and any inquiry would have advised Williams that Mrs. Fowler had nothing to grant to Blunk by a new lease. Williams would have learned that the purpose of the surrender and the new lease was merely to give Blunk the $50 a month to which Moore was entitled, and doubtless he would have known of the fraud. At any rate, the burden was upon the defense to show want of notice, and that was not done. The plaintiff in error was entitled to a decree securing to him the $50 a month which Moore was to receive under the sub-lease, and the lessee became liable to a decree against him for the same from the time the bill was filed and process served on such lessee. The record does not contain facts from which we can determine such liability, and it will be determined by the superior court upon such further evidence as the parties may present to that court.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause is remanded to the superior court, with directions to enter a decree requiring every person liable, as' lessee, for the rent of the premises during the existence of the lease after service of process on Joseph Marshall and Frank Marshall, to account for and pay to the plaintiff in error, as trustee in bankruptcy for Pony Moore, $50 per month reserved to Moore by the agreement.

*Reversed and remanded, with directions.*