(No. 11053.—Reversed and remanded.)

JOHN P. GARRITSON, Appellant, *vs.* BROWN BRAY *et al.* Appellees.

*Opinion filed February 21, 1917.*

1. FRAUD—*no one can take advantage of fraud practiced for his benefit and with his knowledge.* It is fundamental that fraud vitiates everything, and no one can take advantage of his own wrong or of a fraud practiced for his benefit and with his knowledge.

2. SAME—*purchaser from one who obtained his title by fraud must prove himself a bona fide purchaser without notice of fraud.* One who claims title under a grantee who obtained his title by fraud has the burden of showing that he purchased in good faith and without notice of the fraud, particularly where the defrauded grantor is in the possession and occupancy of the premises.

APPEAL from the Circuit Court of Wabash county; the Hon. J. C. EAGLETON, Judge, presiding.

P. J. KOLB, and M. J. WHITE, for appellant.

NOAH C. BAINUM, for appellees.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

Appellant, John P. Garritson, filed his bill in chancery in the circuit court of Wabash county on December 8, 1915, against appellees, Brown Bray, Garrett J. Cozine, O. W. McKinney and Bertha L. Clevenger, to set aside a certain deed made by appellant to lot 195 in the city of Mt. Carmel, Illinois, to Bray, a mortgage by the latter to Cozine for $1500, and a deed from Bray to Mrs. Clevenger of the same property, on the ground that the deed from appellant to Bray had been obtained by fraud and misrepresentation, and that the subsequent mortgage and deed were made for the purpose of carrying out a conspiracy entered into by said parties to defraud appellant out of said lot.

The bill charges that appellant was the owner of the property in question, and that on or about August 1, 1915,

he listed the same for sale with Garrett J. Cozine, who was a partner in the real estate business with O. W. McKinney, and that Cozine and McKinney entered into a conspiracy with Brown Bray to defraud appellant out of his property, and induced him to make an exchange of his property with Bray for a certain farm which the latter owned in White county, embracing 160 acres, situated in sections 19, 20 and 30 in that county; that appellant was in poor health at the time and unable to make an investigation of the farm for himself, which fact was known to appellees; that Cozine, McKinney and Bray falsely and fraudulently represented to him that the property was subject to a mortgage for $10,000 and that an extension of time for payment of the same could be had for two years from that date; that appellant believed these statements to be true and relied upon them; that appellees knew the statements were false and untrue, and that they were made for the purpose of deceiving and defrauding appellant out of his property, with knowledge that he was ill and unable to investigate the truth of such statements; that at the time the statements were made the property was incumbered by mortgages to the extent of approximately $25,000; that the mortgage from Bray to Cozine was made for the purpose of furthering the conspiracy and assisting in defrauding appellant out of his property; that the deed from Bray to Mrs. Clevenger was without consideration, was never delivered to the grantee therein, and was made for the purpose of aiding Bray in his fraudulent design against appellant. The bill prays that each of these conveyances may be decreed null and void and expunged from the records as a cloud upon appellant's title to the property.

Appellees answered the bill, admitting the listing of the property with Cozine and McKinney for sale, the exchange of the property by Bray and appellant, the making of the mortgage to Cozine, the conveyance of the property by Bray to Mrs. Clevenger and the filing of the respective deeds and

mortgages for record, but denying that the appellees entered into any conspiracy to defraud appellant out of his property or that they made any misrepresentations to him as to the amount of incumbrances on the property; alleging that appellant made the exchange of property after full examination by himself, and that he relied upon such examination and not on the representations made to him by appellees. Replication was filed to the answer and the cause was heard by the court, which rendered a decree in favor of appellees and dismissed the bill for want of equity. This appeal followed.

The errors assigned are, that the court erred in dismissing the bill for want of equity; in not decreeing the deed from appellant to Bray, the mortgage by Bray to Cozine and the deed by Bray to Mrs. Clevenger were null and void and should be set aside; and that the decree is contrary to and not supported by the evidence.

At the time of the transaction in question appellant was about sixty-eight years of age, in poor health, under the doctor's care, and scarcely able to travel about and give proper attention to his business and affairs. He was the owner of the property described as lot 195 in the city of Mt. Carmel, Illinois, on which were situated three dwelling houses. The approximate value of his property was $6000, and he desired to dispose of it so as to enable him to remove from that place. Some time during the month of July, 1915, he went to Cozine, a neighbor, who was associated with McKinney in the real estate business in Mt. Carmel, and told him he desired to dispose of his property and would just as soon pay him a commission as anyone for selling it for him. He was afterwards introduced to McKinney, and these parties undertook to assist him in making a disposition of his property. They first tried to interest him in farm lands in southeastern Missouri and subsequently told him about Bray and introduced him to Bray, and finally induced him to make an exchange of his prop-

erty with Bray, who told him he had good farm land in White county, worth $100 an acre, subject to a mortgage for $10,000, and that the purchaser would have two years in which to pay it off. At the instance of McKinney and Cozine appellant and his wife went with them to view the Bray property. Before going appellant told them he was in such poor health that he would be unable to do anything if he went and would have to rely solely upon them in the matter. He rode from his house to the station in an automobile, from there on the train to Carmi and from there by automobile to the Bray property. Here he again met Bray, and there was further talk about an exchange of properties and as to the quality of the land. Appellant's physical condition was such that he could not go over all of the land and he told Cozine to examine the land for him. Cozine went to look at the land and was gone for a time, and when he came back he represented that it was very fine land; that he had never seen such corn before, and that the corn on it would go at least seventy-five bushels to the acre. The land which appellant saw was next to the road, which was good land, and it was represented to him that the balance was of the same quality. The parties then returned to the hotel at Carmi but too late to catch the train for Mt. Carmel, and the appellant remained at the hotel over night. Some time during the evening a contract was drawn up in duplicate and signed by appellant for the exchange of his Mt. Carmel property for 120 acres of this land at a valuation of $100 per acre. Appellant's property was to be taken at $6000, the farm to be taken subject to a mortgage of $6000, which he was to assume and pay, and he was to have two years in which to make the payment. Bray does not appear to have been consulted about this contract, which was drawn by McKinney and taken by him to be signed by Bray, one copy being retained by McKinney and the other returned to appellant. This contract was never signed by Bray. A short time after this, Bray, his son, McKinney, Cozine and a man

·by the name of Helck, from Grayville, came to see appellant at his home. They represented to him that McKinney was representing Bray and that Cozine would represent him, and a trade was consummated for appellant's property in exchange for 160 acres of Bray's land at $100 per acre, appellant's property being taken at a valuation of $6000, the farm to be taken subject to a mortgage of $10,000, which appellant assumed and agreed to pay and which he was told he would have two years in which to pay. The deed recited: "This deed is made subject to $10,000 of mortgages held by Albert Schoemann, of Carmi, Illinois, which the grantee herein assumes and agrees to pay as a part of the consideration herein, and also subject to the taxes for the year 1915." The deed is dated August 14, 1915. This agreement was made with McKinney, and the deed from Bray to appellant was brought by McKinney to appellant, who left it with McKinney to be recorded. Appellant paid McKinney the fee to have it recorded. The day before, appellant had executed the deed to Bray and given it to McKinney to deliver to Bray, conveying to Bray his lot in Mt. Carmel. So far as the evidence shows neither Bray nor Helck, who Bray now claims represented him in the deal, ever was in any of the houses owned by the appellant and ·traded for by him or made any examination whatever of the property or inquired as to its value. This matter seems to have been left entirely by him to Cozine and McKinney.

It further appears from the evidence that some time before appellant listed his property with Cozine the latter and McKinney had endeavored to sell the Bray farm to one Halbig and also to one McCoy, both of whom went to look at the land at the instance of McKinney; that the day appellant and wife went to look at the land McCoy told McKinney, on the train going down there, he was off of the deal; that notwithstanding this conversation with McCoy, ·had while on the train going down to view the Bray property, they nevertheless, in their efforts to induce appellant

to make this exchange of properties, urged upon him that he should act promptly, as McCoy was in town and had gone out to look at the farm and was apt to make a trade with Bray, and in that way appellant might lose this great bargain, and even went so far as to send Cozine out to see where Bray was. It also appears that at the time these exchanges of property were made and the deed drawn and executed both Cozine and McKinney knew, as well as Bray, that the land in question, together with some other land owned by Bray, was mortgaged for approximately $25,000, including principal and interest due, and that the interest had not been paid for over two years; that the mortgagee had been compelled to pay the taxes; that he had been consulted and had refused to agree to let the mortgages run for two years more, but had insisted that both the interest and taxes must be paid before he would consider that matter; that there were two judgments of record against Bray unsatisfied, both of which were still liens upon this property. These facts are testified to by appellant and not denied by either Cozine or McKinney, both of whom were present during the trial and neither of whom took the stand in his own behalf. A few days after the deed from appellant to Bray was executed and delivered to him he placed a mortgage on the property for $1500 to Cozine, and subsequently, on December 6, 1915, executed a deed to the property to his daughter, Mrs. Clevenger, for a consideration, as expressed in the deed, of $4500. While a deposit appears to have been made in the bank to Bray's credit for the amount of the proceeds of the mortgage of $1500, he is unable to account for his reason for borrowing that amount or to show what he did with more than about $750 of the proceeds of such loan, nor is there any evidence to show that Mrs. Clevenger paid to Bray any part of the $4500 consideration expressed in the deed from him to her.

At the September term of the circuit court of White county Schoemann filed a bill to foreclose a mortgage for

$15,000 which was on the land traded to appellant. At that time appellant was on a visit to Indianapolis and did not return in time to be served with process at that term of court and the cause was continued to the following term for service. Upon his return appellant learned of the suit and saw McKinney and Bray, both of whom assured him that the matter would be taken care of, and that if the mortgage was not paid his property would be returned to him. At one time appellant started to see Schoemann about the matter and was met at the station by Bray, who told him it was best for appellant not to see Schoemann as he had already talked with him; that all Schoemann wanted was a little money and everything would be fixed up satisfactorily; that he (Bray) had a deal on for a trade for his land and could raise the money for his part of it, and induced appellant to return home without seeing Schoemann. There is no evidence that Bray had any such deal pending, nor did he ever raise any money to pay off his share of the mortgage. After that appellant would see McKinney or Cozine nearly every day, and they would tell him "Bray is coming up; not to be uneasy; we will get your home back." In this way appellant was put off, from time to time, until a decree of foreclosure was entered and the property sold to pay the mortgage on the land, amounting to some $17,000 principal and interest then past due, and which was due at the time the exchange of properties was made. During all this time appellant remained in possession and actual occupancy of the property he had deeded to Bray, and is still in possession so far as the record shows, and has never paid any rent nor been asked to account for its use and occupancy.

The fraud relied upon as defeating the transaction is the fraudulent representations that the property was subject to a mortgage of but $10,000 and that appellant would have two years in which to make payment of such mortgage if the trade were made. There can be no question but that such representations were made to appellant and that he be-

lieved them and relied upon them and would not have made the trade had the true facts been disclosed to him. He testified that such representations were made to him by both Cozine and McKinney, and his testimony is not denied by either of them. That the representations were false and untrue and known to be false and untrue by Bray, McKinney and Cozine is clearly established by the evidence. We think it is clear from the evidence that all the defendants conspired to defraud a sick and helpless old man out of his home. The facts showing the fraud and conspiracy are not denied by them. Appellant relied on them, as he was not able to make the necessary investigation for himself. It is shown by the testimony of Stewart Kuykendall, the abstracter, that Bray and McKinney came to his office and wanted a deed drawn up subject to a $10,000 mortgage, which the grantee was to assume and pay as a part consideration for the purchase, and were told by him there were $19,000 or $20,000 of incumbrances against this land and other lands, held by Schoemann and his daughter, and for that reason the deed would have to be made subject to $10,000 of incumbrances against the two tracts as the land could not be separated, the prior mortgage being on a part of this land and the balance a second mortgage on this land and a first mortgage on other land owned by Bray. He further testified that just a few days prior to the time the deed was drawn Bray asked him to see Schoemann for him and see if the latter would allow him to make the trade and count $10,000 of the mortgage against this 150 acres and give the man buying two years' time for payment of the $10,000; that he went to Schoemann and reported back to Bray that Schoemann would make no agreement of any kind unless the taxes and interest were paid; that Schoemann had said something had to be done; that he had paid the taxes on it himself and the interest was not paid, and unless something was paid to him he would not make any agreement of any kind.

Appellees insist that McKinney was the agent of appellant and that he is bound by his acts in the premises, for the reason that the evidence shows that Cozine and McKinney were in partnership and that appellant placed his property in the hands of Cozine for sale. While it is true that the employment of a member of a firm in the ordinary course of the business of such firm is an employment of all the members of such firm or partnership, we think the question of. agency is not decisive of this case. It is fundamental that fraud vitiates everything, and that no one can take advantage of his own wrong or of a fraud practiced for his benefit with knowledge of such fraud. The evidence in this case conclusively shows that appellant was deceived as to the amount of incumbrances on the property and as to the time he should have in which to pay the same; that this fact was known to Bray, McKinney and Cozine and they took advantage of it in order to consummate the deal with appellant. The prior dealings between Cozine, McKinney and Bray, their prior attempts to sell the Bray property, as well as the subsequent actions of the parties after the deal was consummated and after the bill to foreclose the mortgages was filed, we think sufficiently show that these parties were acting together in an effort to defraud appellant out of his property. For this reason we must hold that the deed from appellant to Bray was obtained by fraud and was therefore null and void; that Cozine took his mortgage with full knowledge of the circumstances under which Bray obtained title to the property, and that his mortgage is also void, and that the court erred in not decreeing the instruments void and ordering them to be set aside, canceled and expunged from the record.

As to the deed from Bray to Mrs. Clevenger, the evidence shows that she is the daughter of Bray, and there is no evidence in the record of any negotiations had between her and Bray for the purchase or sale of the property, nor do we find any evidence that the deed was ever delivered to

her or that she paid him any valuable consideration for the property. While the deed expresses that it is made upon a consideration of $4500, neither she nor Bray testified that such sum or any other sum was ever paid to him as a consideration for the property. In short, there is no evidence in the record to show that the transaction between Bray and his daughter was a *bona fide* transaction. Appellant was in possession of the property, and she took the deed with notice of his possession and occupancy and his rights therein. In *Lyon* v. *Moore*, 259 Ill. 23, we held that while a transaction fraudulent as to creditors would be sustained as to an innocent purchaser for a valuable consideration without notice of the fraud, it was there pointed out that one who claimed title under a grantee who obtained his title by fraud had the burden of showing that he had purchased in good faith and without notice of fraud. The record in this case is wholly wanting in any evidence to show that Mrs. Clevenger is a *bona fide* purchaser without notice of the fraud, and for that reason the deed to her must be held void and should be set aside.

For the reasons given, the decree of the circuit court will be reversed and the cause remanded, with directions to set aside the deed from appellant to Bray, the mortgage from Bray to Cozine and the deed from Bray to Mrs. Clevenger as null and void and to order them expunged from the records as clouds on appellant's title, and that the deed from Bray to appellant be decreed null and void and ordered surrendered up and canceled and ordered expunged from the records, and for such further relief as is necessary to carry out the views expressed in this opinion.

*Reversed and remanded, with directions.*