**Louis D. Glanz, Trustee, et al., Appellants, v. Adolph L. Halperin and Max Korach, Appellees.**

**Gen. No. 32,976.**

Heard in the second division of this court for the first district at the October term, 1928. Opinion filed February 14, 1929.

JACOB LEVY, for appellants; J. M. GWIN, of counsel.

ADLER, LEDERER & KAHN, for appellees.

MR. JUSTICE SCANLAN delivered the opinion of the court.

Louis D. Glanz, trustee, Fannie Levy and Flora Goldberger, plaintiffs, sued Adolph L. Halperin and Max Korach, defendants, in the municipal court of Chicago in an action in forcible entry and detainer. The

case was tried before the court with a jury and there was a verdict returned in favor of the defendants. Judgment was entered on the verdict and this appeal followed.

The plaintiffs leased the store known as 1231 North Ashland Avenue, Chicago, to Adolph L. Halperin for a term commencing May 1, 1921, and ending April 30, 1931, at a rental of $300 per month. The lease contained, *inter alia,* the following provision: "It is further agreed that said second party may assign and sublet the said premises; it is further agreed that any sublessee shall have no right to sublet without the written consent of the parties of the first part, unless reassigned to party of the second part." The lease also contained the ordinary provisions in reference to forfeiture. On August 30, 1922, Halperin executed a sublease of the premises to Max Shure, Abe Shure and Sam Shure for a period commencing September 1, 1922, and ending April 30, 1931. The said Shures entered into possession of the premises and conducted a restaurant therein until August, 1925. On April 1, 1924, the said Shures executed a chattel mortgage to Hyman Shure, their father, conveying to him the fixtures in the restaurant and also all their right, title and interest in and to the lease. Hyman Shure sold the mortgage to George Goldman and Nicholas Goldman. In August, 1925, Max Shure, Abe Shure and Sam Shure defaulted in the payment of the mortgage and abandoned the premises, leaving the fixtures in it. The mortgage was foreclosed and the Goldmans went into possession of the premises and the fixtures in August, 1925. Then (to quote from the statement of the counsel for the defendants to the jury) "the Goldmans took possession of these fixtures under that mortgage sale. . . . They then owned the fixtures in that store, but they had no lease on the store although they had their fixtures in that store without a lease for it. . . . Whereupon the Goldmans

then went to Halperin who had the original lease with the plaintiffs and by an agreement with Halperin they were permitted to leave their fixtures in the store, and they paid Halperin each month,—commencing in August 1925 . . . something like $350 per month, being fifty dollars a month more than Halperin paid the plaintiffs, until December, 1927.'' For a time, at least, the Goldmans conducted, through managers, a restaurant in the premises. The plaintiffs introduced proof to the effect that in July, 1927, a man named Frieberg was in possession of the premises and conducting a restaurant therein. The defendants contend this proof is insufficient to establish the alleged occupancy of the place by Frieberg. The plaintiffs also introduced evidence to the effect that from November 5, 1927, until the time of the trial the defendant Max Korach was in possession of the premises as a tenant of the Goldmans and that he conducted a restaurant therein under the name of the Korach Sandwich Shop. The defendants insist that Korach was merely managing the restaurant for the Goldmans during said period. After a very careful examination of the evidence bearing upon this question, we are satisfied that the overwhelming weight of the evidence sustains the contention of the plaintiffs that Korach occupied the premises as a subtenant of the Goldmans and conducted his own business therein. Korach testified for the defendants respecting the nature of his occupancy. His testimony, standing alone, is of such a nature that it is entitled to but little, if any, probative force, and he was thoroughly impeached by other witnesses and by facts and circumstances in evidence. Prior to December, 1927, Halperin paid to the plaintiffs, monthly, the rent due under the lease. The Shures never reassigned the lease to Halperin. On December 3, 1927, the plaintiffs served a written notice on Halperin terminating the lease ''because there has been a sublease of the premises in violation of the

terms thereof," and demanding immediate possession of the premises. "Anywheres between the first and the tenth" of December, the Goldmans obtained from Halperin what purports to be a written assignment of the lease, and paid the latter $2,000 for the same.

The question before us is, Were the plaintiffs, under the facts and the law, justified in declaring a forfeiture of the lease?

The defendants contend that Max Shure, Abe Shure and Sam Shure were Halperin's assignees, not his lessees, for the reason that the sublease from Halperin to the Shures demised to the latter, without any reservations, the entire term of the lease. This contention may be conceded. (See *Sexton v. Chicago Storage Co.,* 129 Ill. 318; *Lyon v. Moore,* 259 Ill. 23.) As the Shures never reassigned the lease to Halperin, the latter, after he assigned to them, no longer had the right or power, under the lease, to assign or sublet the premises.

The defendants argue that the Goldmans were in lawful possession of the premises under the terms of the lease, and in support of their argument they contend: First, "Halperin assigned to the Shures, as he had the right to do under the lease"; second, the Shures had the right under the lease to assign it and the Goldmans "as purchasers of the Shure leasehold under the chattel mortgage foreclosure became the Shures' assignees by operation of law"; third, the Goldmans never sublet or assigned the premises to anyone.

The first contention may be conceded. We have already disposed of the third contention, and adversely to the defendants, and our ruling in this regard alone would require a reversal and remandment of the cause, but because the case must be tried again, we deem it necessary to pass on other questions involved in the appeal.

The defendants contend that there is no restriction in the provision against assigning "by any of Hal-

perin's assignees.'' There is nothing stated in the lease concerning assigning or subletting save what is contained in the provision in question. "In the absence of an express restriction, either by contract or by statute, the right of the tenant to assign his leasehold estate is incident to every tenancy either for life, for years, or from year to year, and it is not necessary that the lease run to the lessee and assigns.'' (Am. & Eng. Encyc. of L. (2d Ed.), vol. 18, p. 659; *Howland v. White,* 48 Ill. App. 236, 243; *Barnes v. Northern Trust Co.,* 169 Ill. 112, 116.) This rule is followed under our statute. (*Gillespie v. Fulton Oil & Gas Co.,* 236 Ill. 188, 206.) If the lessor intended that there should be no restriction as to assignment of the lease, it would have been entirely unnecessary to incorporate in the provision in question the words that "it is further agreed that said second party may assign.'' The provision was not drafted without consideration, as it is partly in typewriting and partly in handwriting. As we interpret it, the lessors inserted it in order to prevent an undesirable tenant from being forced upon them. Apparently, they had confidence in Halperin and were willing to have him, under certain conditions, name a tenant, but they were not willing to have a sublessee or assignee of Halperin name one. The lease provided that the premises were to be occupied as a restaurant, and there is much force in the argument of the plaintiffs that at the present time such a business is subject to surveillance under the Volstead Act and that a landlord is obliged to be careful to whom he rents his premises when they are to be used in a business of that kind. To fairly interpret the meaning of that part of the provision in respect to assignment the entire provision should be considered. We are of the opinion that the Shures, under the terms of the lease, did not have the right to assign the same to the Goldmans, and it is therefore unnecessary for us to decide the disputed question as to whether or not, if the

Shures had the right to assign the lease, the Goldmans, as purchasers of the Shure leasehold under the chattel mortgage foreclosure, became the Shures' assignees, under the lease, by operation of law. The defendants concede, as they must, that if the Shures had not the right and power to assign the lease to the Goldmans the latter could not claim a right of possession of the premises under the lease unless the alleged assignment from Halperin to the Shures, executed in December, 1927, gave them that right. That assignment conveyed nothing under the lease to the Goldmans, for two reasons, first, because it was executed after the plaintiffs' right of forfeiture had accrued, and, second, because the Shures never reassigned the lease to Halperin and the latter, at the time he executed the so-called assignment, had no interest in the lease and therefore had no right or power to assign the same to the Goldmans. It is significant that the Shures, after the plaintiffs had declared a forfeiture, were so doubtful as to their right of possession under the lease that they paid Halperin $2,000 for this worthless assignment.

The judgment of the municipal court of Chicago is reversed and the cause is remanded. It is remanded solely for the following reason: There is some evidence in the record tending to show that the plaintiffs, by reason of their conduct, have waived the right to declare a forfeiture of the lease. While it is perfectly clear from the instructions given to the jury by the court that this issue could have played no part in the determination of the case by the jury, nevertheless, the defendants, in another trial, would have the right to maintain this defense.

*Reversed and remanded.*

GRIDLEY, P. J., and BARNES, J., concur.