[No. 32487.   Department Two.   January 7, 1954.]

WANETTA JARRETT, *Respondent,* v. FRANCIS ARNERICH *et al., Appellants,* FRED E. THOMAS, *Defendant,* HOWARD JARRETT, *Respondent.*[1]

[1]Reported in 265 P. (2d) 282.

*Kenneth O. Welling* and *Frederick W. Post,* for appellants.

*Alexander Wiley,* for respondent Wanetta Jarrett.

SCHWELLENBACH, J.—February 22, 1950, Howard and Wanetta Jarrett, husband and wife, entered into a real-estate contract with Clifford Land Company to purchase tract No. 21, Aurora Heights, Division No. 2, as per plat recorded in the records of Snohomish county. The purchase price was $1,000. In October of 1950, they borrowed $500 from Arnerich in order to complete the building of a house. Arnerich also paid off the contract. The deed from the Land Company was executed to the Jarretts, who, in turn, deeded to Arnerich. They entered into a real-estate contract to purchase from him, the exact purchase price being the amount he had paid out on the contract plus the $500 he had loaned to them. June 14, 1951, they borrowed an additional $500 from him, tore up the old contract, and entered into a new one. The purchase price was $1,766.19, the amount of their then indebtedness to him. The contract provided for monthly payments of $20 on the 22nd of each month during the life of the contract.

In June of 1952, when the balance due on the contract was $1,614, Mrs. Jarrett had trouble with her husband and went to California. She left her son by a former marriage with him, and, before leaving, paid the taxes on the property.

After his wife left, Jarrett listed the property for sale for $3,950 with a real-estate company. He learned that he would have to have his wife's signature in order to complete the sale. He then went to see Arnerich, who asked if the

contract had been recorded. When Arnerich learned that it had not, he and Jarrett contrived a plan to dispose of the property without Mrs. Jarrett's signature. Jarrett was angry at his wife for leaving him, and he did not want her to get any money out of the property. Arnerich wanted only what he had coming under the contract and told Jarrett that he could have the balance. It was planned to clear up the title in Arnerich, who would then sell to someone else.

The following letters passed between the parties:

"Mr. Howard Jarett                    July 22, 1952
  Seattle Heights
  Gen. Delivery
  Washington
"Dear Sir:

"As in accordance with your contract on which you are purchasing the home you have from me.

"Please be informed that you waive all rights to that property when you fail to make your payments.

"You are hereby notified that your last payment has not been received and is past due therefore I am at this time serving notice that you have violated the terms of your contract and that your contract is now void.

> "Sincerely,
> [signed] F. Arnerich
> Rt. 4 Box 2457-X
> Edmonds, Wash."

"Mr. F. Arnerich          Seattle Heights, Washington
  Route 4                  24th July, 1952
  Box 2457-X
  Edmonds, Washington
"Dear Sir:

"This is to acknowledge receipt of your letter to me of July 22, 1952. First of all, I wish to thank you for your cooperation and the favors you have given me.

"Due to circumstances beyond my immediate control I am not able to keep up the payments on the contract I have with you. I understand that I waive all rights to the property which is the subject-matter of that contract, and hereby confirm that understanding.

"I further wish to inform you that you may repossess yourself of the property immediately, in accordance with my

understanding of the forfeiture provisions of the contract aforesaid.

"Thank you again for your efforts.

"Very truly,

[signed] HOWARD JARRETT

HOWARD JARRETT

General Delivery

Seattle Heights,

HJ/jfs                                                Washington."

Jarrett sold the furniture and shipped the boy to Milwaukee. He turned the keys over to Arnerich, who gave him $90 for a payment on his car. He then went to California. Arnerich sold the property under contract to Fred E. Thomas for $3,450; $350 down and $35 per month. Before making the deal, Thomas searched the records and found no cloud on Arnerich's title.

Jarrett met his wife in California and told her what had transpired. She obtained a power of attorney from him and came back. She offered Arnerich the two payments then due, which he refused. He did offer her $860 in settlement, which she agreed to take. It was necessary for her and her husband to quitclaim their interest to him. When the papers were brought to him, he changed his mind. In the meantime, Jarrett write Arnerich:

"Mr. F. Arnerich

Edmonds Wash—

"Dear Friend—

"My wife and I had a talk and she is wise to the whole set up. Seems there is a leak—her att. talked with me—and he advised her to see the district att in Everett. Now I advised her to have a talk with you first—I am sorry we got in this it would have been better if I had kept the Place—for you know my sole purpose was to get money to clear debts—the way it turned out I get the other End of the horse—You can do business with her. and I will play long. with you. Both. There isn't enough envolved to go through cort. So if you can see your way clear strike a bargin with her.— Pay up for the amount. that is due. for our equity—Make the draft payable to Howard and Wanetta Jarrett. We will pay all our debts and divide the Spoils. We are getting a divorse. She is in possession of the last receipt for June 22nd and she has us both over a barel so I am willing to

except any agreement you make with her. the check made to us both will give you a clear title—and bee your receipt. her att tells her she can make payment and take possession. I tried to get you Sat on the phone. allso Sunday but never could catch you in. Well I hope this will work out ok. Good luck—As ever

"[signed] HOWARD P. JARRETT."

When negotiations between Mrs. Jarrett and Arnerich proved futile, she commenced this action. She sued the Arnerichs and "John Doe and wife" (Thomas), who were purchasing under contract from Arnerich. She alleged a conspiracy between Arnerich and her husband to defraud her out of her equity in the property; that the real-estate contract had never been legally terminated, and that the contract was still in force and effect. She asked that possession of the property be restored to her and that the contract be reinstated; that, in the event this could not be done, that she recover judgment against Arnerich in the amount of her equity.

Defendants answered that any rights acquired by the plaintiff were acquired as community property by her and her husband; that she had abandoned the contract and that defendants dealt with her husband as manager of the community. Thomas answered, alleging that he was in possession of the property by virtue of a contract with Arnerich, which he entered into in good faith without any knowledge of any interest of the plaintiff or her husband. At the beginning of the trial, the court ordered that the husband, who was present as a witness, be made a party defendant.

The trial court found that the attempted forfeiture of the interest of the Jarretts in the real-estate contract had never been validly accomplished, and that defendants Arnerich had unlawfully converted to their own use the interest of the Jarrets in the amount of $1,430.73. The court concluded that the plaintiff and her husband should be subrogated to the rights of the defendants Arnerich in the real-estate contract with Thomas until the sum of $1,430.73 should be paid. Judgment was entered accordingly, and this appeal follows.

Appellants make twelve assignments of error, which they argue under two headings:

A. The purchaser's interest in a real-estate contract is, personal property of the purchasers, and, as such, is subject to the management and control of the husband.

(1) The husband alone can surrender a purchaser's interest in a real-estate contract without the joinder and consent of the wife.

(2) The surrender of the purchaser's interest in a real-estate contract is not a conveyance or encumbrance of community real estate within the meaning of RCW 26.16.040.

(3) A vendee's interest in a real-estate contract is, at best, personal property and subject to the management and control of the husband.

(4) The plaintiff and defendant husband cannot avail themselves of their own breach of contract and their own abandonment of the contract in order to recover from the defendants Arnerich.

B. Both husband and wife are necessary parties plaintiff in an action to recover community real property.

Taking up B first; at the outset of the trial, and before any witnesses were sworn, the court made the husband a party defendant, recognizing that the action must, of necessity, have been for the benefit of the community. This was done without objection by any of the parties.

At first glance, it would appear that the first transaction between the parties constituted a mortgage, and that the deed from the Jarretts to Arnerich was given for the purpose of securing their indebtedness to him. The test is stated in 4 Pomeroy's Equity Jurisprudence (5th ed.) 579, Forms and Kinds of Mortgage, § 1195:

"The practical test is whether there is a liability, notwithstanding or independent of the conveyance and contract of reconveyance, which the grantee can enforce against the grantor. If a loan is made to the grantor at the time of executing the conveyance, and the continued existence of his indebtedness therefor is evidenced by some collateral engagement given by the grantor, such as a note or bond, the case is simple and the transaction is clearly a mortgage. In the second place, if the conveyance is given in considera-

tion of an antecedent debt due from the grantor, and this debt yet remains, so that the grantee may enforce his claim at some time or another against the grantor, the transaction is also a mortgage. But if this antecedent debt is wholly satisfied and extinguished by the conveyance, so that no liability remains under any circumstances against the grantor, then there is no mortgage, since there is no debt to be secured thereby."

It must be shown, by clear and convincing evidence, that a mortgage and not a sale with the right to repurchase was intended. *Johnson v. National Bank of Commerce,* 65 Wash. 261, 118 Pac. 21. Here the parties, by all of their actions, including the pleadings, considered this transaction as a sale and not as a mortgage. The parties therefore had the right to enter into the executory contract of sale.

Appellant contends that a purchaser's interest in a real-estate contract is personal property; *Norman v. Levenhagen,* 142 Wash. 372, 253 Pac. 113; that the husband has the management and control of community personal property and, as manager of the community, may relinquish or permit a forfeiture of the community estate and interest in an executory contract of purchase of real property. *Tieton Hotel Co. v. Manheim,* 75 Wash. 641, 135 Pac. 658. Nevertheless, he must carry on the affairs of the community in the community interest. *Stewart v. Bank of Endicott,* 82 Wash. 106, 143 Pac. 458. We there said that the husband "can neither beggar his family nor use the community personal property to gratify a caprice to thwart the law, or for his own personal aggrandizement."

In the case at bar, the husband was not working for the benefit of the community when he "forfeited" the executory contract of purchase. He was working for his own selfish interests and endeavored to sacrifice the community property with that end in view. The wife had not abandoned the property. Just before leaving for California, she had paid the taxes. She, as a member of the community, was entitled to notice of forfeiture. She was not given such notice. The record is clear that her husband and Arnerich plotted to deprive her and the community of their interest.

The trial court correctly found that the attempted forfeiture of the interest of the Jarretts in the real-estate contract had never been validly accomplished.

Thomas acted in entire good faith. Before entering into the contract to purchase the property, he searched the record and found no encumbrances against Arnerich's title. The Jarretts did not record their contract. They cannot complain that, because of their failure so to do, a new contract has been entered into. Mrs. Jarrett and the community have suffered damage because of what has transpired. Appellants have not lost one cent. However, they should not be permitted to make any profit out of the transaction because of appellant husband's machinations. They are raising no objection to the form of the judgment subrogating the Jarretts to the interest of the appellants in the Thomas contract.

The judgment is affirmed.

GRADY, C. J., HAMLEY, DONWORTH, and FINLEY, JJ., concur.