305 P.2d 463

Hans I. MORTENSEN, Administrator of the Estate of Hans Mortensen, deceased, and Hans I. Mortensen, Administrator of the Estate of Winnie Mortensen, deceased, Appellant,

v.

James Z. KNIGHT, Appellee.

No. 6060.

Supreme Court of Arizona.

Dec. 28, 1956.

H. Vearle Payne, Lordsburg, N. M., Chester J. Peterson, Phoenix, for appellant.

Fennemore, Craig, Allen & Bledsoe and Calvin H. Udall, Phoenix, for appellee.

STRUCKMEYER, Justice.

This is an action to recover damages for the wrongful deaths of Hans Mortensen and Winnie Mortensen, deceased. From an order granting a motion for summary judgment in favor of appellee and the judgment

thereon this appeal is taken. The complaint alleges in substance that Trena Frances Knight, while driving an automobile furnished and maintained by her husband, James Z. Knight, for the general use, pleasure and convenience of his family, negligently caused it to overturn inflicting injuries upon herself and upon Hans Mortensen and Winnie Mortensen, from which injuries all three subsequently died. The motion for summary judgment filed by appellee, defendant below, was accompanied by an affidavit setting forth that the automobile being driven by Trena Frances Knight at the time of the accident was the community property of James Z. Knight and Trena Frances Knight. The facts as set forth in the affidavit were not controverted and are presumed to be true. Rules of Civil Procedure, Rule 56(e). In accord with our prior holding in Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965, summary judgment was granted by the court below as a matter of course.

In Donn v. Kunz this court held that an action for personal injuries cannot be maintained against a surviving husband where the wife, the tort-feasor, died prior to the commencement of the action if the automobile then being driven by the wife was community property. Since that decision, if adhered to, controls the disposition of this case, an examination of the several predicates upon which it rests is necessary. This in turn requires a somewhat detailed consideration of certain fundamentals of the community system.

This court stated in Cosper v. Valley Bank, 28 Ariz. 373, 237 P. 175, after an examination of the statutes of the State of Washington as they then existed that the community property system of that state was very similar to that of Arizona. As a consequence the decisions from that State have been accorded great weight and have been relied on by this court in deciding the issues in many cases. For example, in Donn v. Kunz it was said:

"* * * We have always held that the community property law of this state was almost identical in principle with that of the State of Washington, and that the decisions therefrom on questions involving the various rights and liability of the community were very persuasive. * * *" 52 Ariz. 223, 79 P.2d 967.

Often the opinions of the Supreme Court of Washington have been cited here as persuasive in the disposition of questions involving various rights and liabilities of the community (term of convenience) without full consideration of the reasons which influenced their adoption there. For example compare Shaw v. Greer, 67 Ariz. 223, 194 P.2d 430, with Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304.

In considering the community property system it should be recognized that certain

salient characteristics unknown to the common law are shared by all states in which it governs:

"* * * (1) the transmissibility of the wife's interests to her heirs, so that if the wife dies first, her heirs take the share to which she would have been entitled if she had survived; and (2) during the existence of the marital relationship the spouses are the joint owners, or partners, with respect to gains and losses." 1 Principles of Community Property, De Funiak 3.

Since both Arizona and Washington claim the community system it would be strange indeed if it could not also be claimed that they were "almost identical in principle".

The concept of joint ownership of property acquired during coverture was originally introduced into Arizona by its earliest settlors from Spain and Mexico. It was adopted in Arizona by the Second Territorial Assembly. Acts of Arizona, 1865, Chapter XXXI.[1] California by its constitutional convention of 1849 adopted the following Article:

"All property, both real and personal, of the wife, owned or claimed by [her before] marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and

laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property, as to that held in common with her husband. Laws shall also be passed providing for the registration of the wife's separate property." Article XI, Section 14, Constitution of California, West's Ann. Const.

This constitutional provision was implemented by legislative act, Laws of California 1850, Chapter 103. All of the first 23 sections of Chapter XXXI of the Acts of Territorial Assembly of 1865 are identical to Chapter 103 of the Laws of California, 1850, as amended through 1857, with the exception of very slight change in language bearing no significant relation to meaning. Sections 1 and 2 of Chapter XXXI have been continued as the law of this state through the various revisions almost verbatim since 1864:

"Section 1. All property, both real and personal, of the wife, owned by her before marriage, and that acquired afterwards by gift, bequest, devise, or descent, shall be her separate property, and all property, both real and personal owned by the husband before marriage, and that acquired by him afterwards, by gift, bequest, devise, or descent, shall be his separate property.

1. And see "Development of Community Property Law in Arizona", an article by the Hon. John D. Lyons, Dean and Professor of Law, University of Arizona, College of Law, reproduced in "Comparative Studies in Community Property Law", Louisiana State University Press, 1955.

"Sec. 2. All property acquired after the marriage by either husband or wife, except such as may be acquired by gift, bequest, devise, or descent, shall be *common* property." (Italics ours).

█ It should, however, be recognized that while the source of the Arizona community property system is California, a comparison with the Constitution of the State of Texas, 1845, Vernon's Ann.St. Article VII, Section 19, shows that Article XI, Section 14, Constitution of California, supra, is identical to that of Texas.[2] It is said to have been adopted verbatim from the State of Texas. 3 Cal.Law Review 369, 373. It should also be pointed out that many of the sections of the California Act of 1850 are identical or nearly identical in language to comparable sections of the statutes of the State of Texas. 2 Laws of Texas 177, 180 (Gammel 1898). The California Act was "plainly modeled upon the experience of Texas", 3 Cal.Law Review 377. For example Section 2 of both acts quoted supra is substantially the same as Section 3 of the Acts of the Second Legislature of the State of Texas approved March 13, 1848:

"Sec. 3. Be it further enacted, That all property acquired by either husband or wife, during the marriage, except that which is acquired in the manner specified in the second section of this act, [by gift, devise or descent], shall be deemed the common property of the husband and wife, and during the coverture may be disposed of by the husband only; * * *." 3 Laws of Texas 77 (Gammel 1898).

From the foregoing we are compelled to conclude that the decisions of the State of Washington, while informative, are not necessarily more persuasive than either of those of the states of California or Texas.

The State of Washington adopted its community property act on December 2, 1869,[3] following Arizona by nearly four years. The idea that Arizona is most nearly identical to the State of Washington is derived from comparison of the respective statutes of the two states, Cosper v. Valley Bank, supra. We have further examined and compared the statutes of Arizona with the Western states which early took their community systems from California, being Idaho, Nevada, New Mexico, and Washington, and have further concluded that the statutes of each state in part have similar language to Arizona, but that a sweeping generalization as to which is more persuasive cannot at the present time be made in the light of the numerous revisions, legis-

2. See also Special Commentary of W. O. Huie, Community Property Laws of Texas, 13 Vernon's Texas Civil Statutes, pages VIII and IX.

3. Its act was copied "almost literally" from the California Statute of 1850. McKay, Community Property, 2nd Edition, 1051.

lative refinements, and judicial interpretation.

■ As has been pointed out, one of the principal and distinguishing features of the community system is that property acquired during coverture by the labor and industry by either husband or wife while living together is held as their joint property.[4] All three of the states of Arizona, California and Texas initially described the property acquired during coverture as the "common property" of husband and wife. This description as common property is consistent with the Spanish Civil Law of the ownership of property by halves.[5] The property acquired during coverture is property owned jointly by the conjugal partners. It is their mutual property.

Now in Donn v. Kunz it was further stated that:

"* * * Under our community property law, all property acquired by the earnings of either the husband or wife, while they are living together, belongs to neither spouse individually, *but to the community,* the interest of the husband being no more nor no less

than that of the wife. * * *" 52 Ariz. 222, 79 P.2d 966 (italics ours).

This doctrine that the property belongs to the community rather than to the conjugal partners jointly is known as the "legal entity theory". It was wholly foreign to the Spanish Civil Law and to the characterization by the legislature of this state in the original Act of 1865. It has been at times criticized, McKay, Community Property, 1st Edition, 205, 35 Harvard Law Review 51, and was repudiated in the State of Washington where it originated. Bortle v. Osborne, 155 Wash. 585, 285 P. 425, 427, 67 A.L.R. 1152:

"[2] By the community property law of this state, sections 6890–6906, Rem.Comp.Stat., the Legislature did not create an entity or a juristic person separate and apart from the spouses composing the marital community. The Legislature did nothing more than classify as community property—designate the character of certain property as community and other property as separate—the property acquired after marriage by the spouses. We have for

---

4. De Funiak reproduces with translation the original Law 1, Title 3, Book 3 of the Fuero Real, promulgated in 1255 and continued into Nueva Recopilacion in 1567, as Law 2, Title 9, Book 5, as follows: "Everything the husband and wife may earn or purchase during union, let them both have it by halves; and if it is a gift of the King, or other person, and given to both, let husband and wife have it; and if given to one, let that one alone have it to whom it may have been given." 2 Principles of Community Property 13, and see also discussion 1 Principles of Community Property, Section 97.

5. Subsequent modification in this state to describe the property as community property, Section 25–211 A.R.S., does not signify a change in meaning.

convenience of expression employed the terms 'entity' and 'legal entity' in referring to a partnership and to a marital community. However, we have never held that a partnership or a marital community is a legal person separate and apart from the members composing the partnership or community, or that either the partnership or the marital community has the status of a corporation. A marital community is in no sense a corporation; neither is it a partnership, though the community of property between the spouses is, in a restricted sense, a partnership between the husband and wife. * * * "

The misconception in this jurisdiction of the relationship of husband and wife to the property which they acquired by their efforts during coverture is directly attributable to the interpretation placed on one statement of the court in La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426. There the court while recognizing the relationship of husband and wife as owners used this language:

"The law, in giving this power to the husband during coverture to dispose of the personal property, does not do this in recognition of any higher or superior right that he has therein, but because the law considers it expedient and necessary in business transactions affecting the personalty to have an agent of the community with power to act. * * * " 15 Ariz. 206, 137 P. 428.

This language was taken by the court in Cosper v. Valley Bank to place Arizona "squarely in accord with the view prevailing in the state of Washington". [28 Ariz. 373, 237 P. 177.] It should now be recognized that the language used in La Tourette v. La Tourette is part of an extensive explanation of the relationship established by marriage under the community property system and is clearly an unfortunate choice in selection of language. De Funiak is more precise in his description of this relationship:

"It must not be assumed, then, that the wife's ownership was any less an equal ownership just because the husband administered the property of both. As head of the family he had the administration but the ownership belonged to both alike. * * * " 1 Principles of Community Property 290.

It is true that the law does consider it expedient and necessary in business transactions affecting the community personalty [6] that there be a person with the power to act. The husband may be loosely designated as the agent of the wife in the management and disposition of her interest,

6. Arizona early restricted by legislative action the power of alienation by the husband to personal property, infra.

yet the analogy is quite obviously misleading when applied to the relationship of the husband to his half interest. In dealing with his own property he is a principal. There is not the slightest semblance of agency. Hence, the statement of the court in the Cosper case that "the statute makes the husband the agent of the community" has no basis in reality [7] for if taken as literally true then, because only persons, natural or artificial, have agents, it would necessarily seem to follow that the community is a legal entity having independent existence similar to a corporation or a municipality. It should be emphasized that the common property is managed or administered by the husband and that neither historically, by statute, or in logic is it correct to say that the husband is the agent of the common property. We are, therefore, of the opinion that the basic predicate in Donn v. Kunz, 52 Ariz. 223, 79 P.2d 966, that "the automobile in question, which was owned by the community and * * * not furnished by defendant Kunz, but by the community, his only relation to its use being a representative one as *the agent of the community*" is wholly erroneous. The automobile there as here being community property was and is owned together by the spouses as their common property, the true relationship of the husband to the automobile being that of a co-owner and statutory administrator of his co-owner's interest.

■ It is appellant's further contention that a husband who maintains an automobile for family use is liable for the negligent operation by a member of his family. This contention invokes the family purpose doctrine long established as the law of this state, Benton v. Regeser, 20 Ariz. 273, 179 P. 966. However, we have never held specifically that the family purpose doctrine applies to an action which involved the use of a community owned automobile.

■■ Ordinarily the negligence of one co-owner is not imputed to the other co-owner, Doleman v. Burandt, 160 Neb. 745, 71 N.W.2d 521, and in states where the family purpose doctrine is rejected there is no presumption of agency between husband and wife in the operation of an automobile merely because of the marriage relationship, Fox v. Lavender, 89 Utah 115, 56 P.2d 1049, 109 A.L.R. 105. However, since the family purpose doctrine is the settled law of this jurisdiction we find it applicable to community vehicles because it rests not on the ownership of the vehicle but upon the control and use. Boyd v. Close, 82 Colo. 150, 257 P. 1079; Hexter v. Burgess, 52 Ga.App. 819, 184 S.E. 769; Hirsh v. Andrews, 81 Ga.App. 655, 59 S.E.2d 552; McNamara v. Prather, 277 Ky. 754, 127 S.W. 2d 160; Meinhardt v. Vaughn, 159 Tenn. 272, 17 S.W.2d 5; Goode v. Barton, 238 N.C. 492, 78 S.E.2d 398.

**7.** See Section 2102, Revised Statutes 1887 quoted infra.

"5. It is insisted there can be no re-covery against the husband because he did not own the automobile. Agency, not ownership, is the test of liability. In this very case a nonsuit was grant-ed in favor of the owner of the car. While the car belonged to a corpora-tion of which Mr. Hexter was presi-dent, it does not appear that anybody ever used it except Mr. Hexter and his wife. He furnished her the instrumen-tality which inflicted the injuries on the plaintiff and put her in charge of it. The jury could have reasonably in-ferred that Mrs. Hexter was using it in family business, as she had gone shop-ping in the business district of Atlan-ta, where she had lunch with her hus-band, and was returning to her home. The car was kept in a garage of the apartment in which the Hexters lived. The custody, control, and use of the car being exclusively in the Hexters, the jury could well find that it was a family car. * * *" Hexter v. Burgess, supra [52 Ga.App. 819, 184 S. E. 773].

In considering the nature and extent of the husband's control over the vehicle we have examined the basis for the assertion that the husband is the manager of the commu-nity property. By Section 9 of Chapter XXXI of the Act of 1865 it was provided:

"* * * The husband shall have the entire management and control of the common property, with the like ab-solute power of disposition as to his own separate estate; * * *."

However, in the Revision of 1887 the fore-going provision was deleted and the follow-ing clause added to what was originally Section 2 of Chapter XXXI of the Act of 1865:

"* * *, and during the coverture may be disposed of by the husband only." Section 2102.

While the reason for the change is un-known, in language it is identical to the last clause of the Act of the Second Legislature of the State of Texas, 1848, supra, and carried through Article 2852 of the Re-vised Statutes of Texas of 1879. The 20th Legislative Assembly of the Territory of Arizona confirmed the action of the revi-sers by adopting an amendment to Para-graph 2102 of the Revised Statutes of 1887:

"* * *, and during the coverture may be disposed of by the husband only; Provided, that the wife joins in all deeds or mortgages to real estate." Act 36, Laws of 1899.

While the deletion of the language of Section 9 of Chapter XXXI of the Act of 1865 giving the husband "the entire man-agement and control of the common prop-erty" seems to suggest that the husband and wife thereafter had an equal voice in the management of community property, if not in the alienation, we are convinced that

such was not the intention. The word "dispose" has two meanings. Illinois Life Ins. Co. v. Beifeld, 184 Ill.App. 582, 594; People v. Sidwell, 27 Cal.2d 121, 162 P.2d 913, 916; 27 C.J.S. pp. 345, 346. It is usually understood to have the meaning of alienate, but it also includes the right or power "to fix the condition, employment, etc, of" and "to direct or assign for a use." Webster's New Int. Dict. 2nd Edition. Ballentine's Law Dict., 1948 Edition states:

"To dispose of does not merely mean to put in place, arrange, or manage; in some connections, it means to alienate, sell, or transfer. * * *"

Since the revisers of the Statutes of 1887 adopted the exact language to be then found in the Texas statute, the meaning ought to be given which was commonly accepted in the State of Texas at that time, Stramler v. Coe, 15 Tex. 211, 216, and consistently adhered to in Texas until statutory change in 1913.

"The express right to dispose of the community given to the husband alone necessarily includes the exclusive power of control and management even short of disposition; * * *." 23 Tex.Jur. 108.

Moreover, settled judicial construction in this state recognizes the husband's dominance in the management and control of the common property. Stiles v. Lord, 2 Ariz. 154, 11 P. 314; La Tourette v. La Tourette, supra; Garver v. Thoman, 15 Ariz. 38, 46, 135 P. 724; Hageman v. Vanderdoes, 15 Ariz. 312, 322, 138 P. 1053, L.R.A.1915A, 491. This construction has continued through a long line of decisions to the present time.

It is, therefore, our conclusion that the family purpose doctrine applies to impose liability even though the automobile is community property, for the control and management is fixed by statute exclusively in the husband. Cf. Jones v. Weaver, 9 Cir., 123 F.2d 403. Since it is the husband's statutory obligation to manage and control the common personal property, the satisfaction of a judgment recovered against the appellee must necessarily be limited to the extent of his interest in the community at the time of its dissolution. Under the circumstances, where the wife is not deceased or her personal representative can be joined in the action, the whole of the community property is, of course, subject to the satisfaction of the judgment.

It is ordered that the summary judgment be vacated and that this cause be remanded for proceedings not inconsistent to this opinion.

LA PRADE, C. J., and PHELPS, J., concur.

WINDES, Justice, with whom UDALL, Justice, concurs (dissenting).

We are unable to concur in the majority opinion. Because of the somewhat lengthy thesis on the history and theory of community property law, we feel that the one question for decision has been somewhat obscured and, as a basis for our views, briefly state the problem presented as follows: Does a husband who purchases a family car with community funds thereby become personally liable under the family car doctrine for its negligent operation by the wife while being used for the purpose for which purchased, the husband not participating in the tortious act?

The majority answers this question in the affirmative by applying the common law principles applicable to master and servant and says, in effect, that the husband, having the control and management of the community family car, made the wife his agent when he permitted its use by her. The majority reaches this conclusion on the theory that this court has in the past erroneously treated the community as an entity. The reasoning to logically arrive at this determination must be as follows: This court said in Donn v. Kunz, 52 Ariz. 219, 79 P.2d 965, that the family car doctrine did not apply so far as to make the husband personally liable because, in furnishing the community car, he did not furnish it individually but in so doing acted in a representative capacity as agent of the community. Since there is no entity, the community, for which he could be

agent, the wife became his agent when driving the car. We think this is fallacious reasoning.

Donn v. Kunz was not wrong in the statement that the husband in furnishing the car acted in a representative capacity and that he did not in so doing act individually, unless the majority also intends to upset the reasoning in this respect as announced by the late Justice Franklin in La Tourette v. La Tourette, 15 Ariz. 200, 137 P. 426, 428, which is one of the foundation stones of our community property law. Therein, the existence of an entity at least to the extent of the existence of a marital community was recognized where it is said the policy of the community property law "is to give the wife in this marital community an equal dignity * *." Likewise, therein it is stated that for expediency the law considers it necessary in the handling of community personalty to have an agent of the community with power to act. Later in the opinion this agency is referred to as "statutory agent or trustee". The majority opinion herein recognizes this representative capacity of the husband in handling community personalty but calls him a "statutory administrator". We care not whether you call the husband an agent of the marital community, an agent of the wife, trustee or statutory administrator. The result is the same, he is acting in a representative capacity. There is nothing unusual about the

use of the term "agent of the community" as descriptive of this representative capacity. It has been used by the Federal and various state courts having community property laws. De Lappe v. Commissioner of Internal Revenue, 5 Cir., 113 F.2d 48; Baca v. Village of Belen, 30 N.M. 541, 240 P. 803. Long after Bortle v. Osborne, 155 Wash. 585, 285 P. 425, 67 A.L.R. 1152, which the majority claims entirely abolished the entity theory, the Washington court in Page v. Prudential Life Ins. Co. of America, 12 Wash.2d 101, 120 P.2d 527, 532, used the following language:

> "That the husband as statutory agent for the community has complete power to buy or sell community personalty and make its contracts is a well-established rule in this state."

This court in its previous pronouncements never intended and we are sure no other court ever intended to say that the marital community or partnership composed of the husband and wife was a separate entity such as a corporation or business partnership. All we mean and the other courts mean when using the term is that the husband in handling community property acts not for himself only but for himself and in a representative capacity for his wife for their mutual interests. When he furnishes the automobile with the wife's funds, he is not furnishing it individually. This so-called marital community through the agency of the husband furnishes it for the use of both as such.

An attempt is made to justify the imposition of individual liability upon the basis that since the husband has the power to dispose of community personalty, by permitting the wife to use the car, he thereby made her his agent. This is extending the scope of authority of statutory agency far beyond that announced in La Tourette v. La Tourette, supra. Therein it was said:

> "The law, in giving this power to the husband during coverture to dispose of the personal property, does not do this in recognition of any higher or superior right that he has therein, but because the law considers it expedient and necessary in business transactions affecting the personalty to have an agent of the community with power to act. So it has clothed the husband with this agency, deeming him the best qualified for the purpose, but limiting such agency to the personalty and during the period of coverture."

By the majority decision herein it is said the power of control permits the husband for his own pleasure to purchase, partly with the wife's funds, a family car for his own exclusive personal use. His agency in disposing of the community property must be exercised in good faith for the benefit of both their interests. Jarrett v.

Arnerich, 44 Wash.2d 55, 265 P.2d 282. To permit him for his own personal pleasure to the exclusion of the wife's rights to thus consume the wife's share of the community property would be nothing short of a fraud upon her.

The state of Washington, long after Bortle v. Osborne, supra, wherein the majority say the entity theory was rejected, had no trouble in disposing, upon sound principles, of the identical question before us here. In Perren v. Press, 196 Wash. 14, 81 P.2d 867, the wife while driving a community car on community affairs negligently operated the same and the trial court rendered personal judgment against the husband. The supreme court reversed, holding that the husband was not personally liable when not present and participating in the tort and there could be no separate liability imposed upon him. We have held long ago that under our statute relating to the rights and liabilities of married women, the husband is not responsible for the wife's torts, Hageman v. Vanderdoes, 15 Ariz. 312, 138 P. 1053, L.R.A.1915A, 491, and in Ruth v. Rhodes, 66 Ariz. 129, 185 P.2d 304, wherein we had the problem of personal liability of the wife for negligent operation by the husband of a highway patrol car, we held no personal liability of the wife for the reason that under the decision in Hageman v. Vanderdoes, supra, the husband was not personally liable. In other words, we said since the husband if the situation were reversed would not be personally liable, the wife is not personally liable.

1 de Funiak, Principles of Community Property, is cited and quoted from. We are willing to admit that this work is recognized as an eminent authority on the principles of community property law. We would likewise quote what this same work has to say concerning the exact problem we have in this case. In discussing the respective personal liability of one spouse for the negligent operation of a community car by the other, it is said (section 182, page 526):

"It should be apparent, under the principle of the community property system that each spouse is a separate person in his or her own right, that the wife is acting as an individual in driving the automobile just as much as the husband would be in driving it. He should no more be liable for her tort than she should be for his. The invocation of this doctrine is only another attempt to drag in by the heels the common law principle that the wife is always subject to the husband's orders and that as her master he is responsible for her tortious acts. Even if the husband has requested or ordered her to proceed to do a certain thing, in the course of which she commits a tortious act, their relation

is not one of master and servant. In the absence of any authorization of the tortious act itself, or ratification of it, so as to tar him with the same brush, there is no reason why his property should be liable. As an individual in her own right, she and her own property should bear the responsibility for her tort. * * *"

de Funiak is entirely correct in saying that the wife in operating a community car is acting as a separate individual and "he (the husband) should no more be liable for her tort than she would be for his". He is correct when he says, "In the absence of any authorization of the tortious act itself, or ratification of it, so as to tar him with the same brush, there is no reason why his property should be liable." He is correct when he says that to hold the husband is "only another attempt to drag in by the heels the common law principle that the wife is always subject to the husband's orders and that as her master he is responsible for her tortious acts." It will probably come as a distinct shock to the married women of the state to learn that hereafter their right to the use of the community car (indeed, of all community personalty purchased for joint use) is subordinate to that of their husbands, and that, by virtue of his newly acquired status, the husband could (if he dared) forbid her the use thereof.

Not only do the majority err in ruling that the husband is personally liable, they compound the error by limiting his personal liability to the extent of his ownership of one-half the community property at the time of the accident. The majority say defendant is responsible under the family car doctrine. That doctrine is based upon the doctrine of a respondeat superior. Benton v. Regeser, 20 Ariz. 273, 179 P. 966. It is elementary not only in this state but in all states that if one is liable under the principles of respondeat superior, he is liable to the full extent of the damage inflicted by his agent-tort-feasor. There is no such thing in the law as making one jointly liable for a tort under these principles and limiting the amount of recovery by the amount of property, community or separate, which he held at a particular time. Respondeat superior means "Let the master answer", not in part but in full for the wrongful acts of his agent. If the wife-tort-feasor acting for their community interests were living, one certainly could not sue the husband alone as principal and limit plaintiff's recovery to the extent of one-half the community property they held at the time of the wrong. Why the incident of her death makes this possible is not explained. Not only is such a rule not the law, it is impracticable. It changes the measure of damages this defendant must pay to the value of one-half

the community property at the time of the accident. This is something never heard of before. It is not and cannot be the law anywhere except in Arizona after this majority decision is announced.

The judgment should be affirmed.

UDALL, J., concurs.